UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CODY WILLARD,<br><br>                     Plaintiff,<br><br>vs.<br><br>OFFICER RANSOM, SERGEANT<br>BONGIOVI, WARDEN<br>CHRISTENSEN, et al.,<br><br>                     Defendants. | Case No. 1:21-cv-00159-DKG<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Defendants Officer Robert Ransom, Sergeant Enrico Bongiovi, and Warden Jay Christensen have filed a Motion for Summary Judgment seeking dismissal of all of Plaintiff's claims. Dkt. 18. All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. Dkt. 14. *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having reviewed the parties' filings in this matter, the Court enters the following Order.

## REVIEW OF MOTION FOR SUMMARY JUDGMENT

### 1.  Introduction

At the time of the incident at issue, Plaintiff Cody Willard was a convicted felon residing at the Idaho State Correctional Center (ISCC), a medium security facility in the Idaho Department of Correction (IDOC) system. Plaintiff alleges that, on or about

**MEMORANDUM DECISION AND ORDER - 1**

October 19, 2020, Defendant Officer Ransom purposely or recklessly opened Plaintiff's cell door and allowed inmate Wilson to enter and stab and beat Plaintiff. Dkt. 3. Wilson's assault on Plaintiff caused puncture wounds, right hand pain, neck pain, and continuing psychological and emotional injury. Dkt. 24-1, p. 8. Plaintiff asserts federal civil rights and state law negligence claims. He seeks monetary damages and injunctive relief.

Defendants now assert that Plaintiff's civil rights claims are subject to dismissal as a matter of law because he cannot establish the essential elements of his claims under 42 U.S.C. §1983, that Defendants are entitled to qualified immunity, and that Plaintiff failed to comply with the state statutory notice requirements for his state law claims.

## 2.  Standard of Law and Explanation of its Application in this Case

Summary judgment is appropriate where a party can show that, as to a claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

To show that a material fact is not in dispute, a party may cite to particular parts of the record or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

**MEMORANDUM DECISION AND ORDER - 2**

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Pro se inmates are exempted "from *strict* compliance with the summary judgment rules," but not "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). At summary judgment, courts "do not focus on the admissibility of the evidence's form," but "on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, Plaintiff must make an objective showing and a subjective showing. The objective showing is that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm," as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted).

The subjective showing is that Defendants were deliberately indifferent "to the threat of serious harm or injury" by one prisoner against another. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). "[D]eliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official "must both be aware of facts from which the inference could be

**MEMORANDUM DECISION AND ORDER - 3**

drawn that a substantial risk of serious harm exists, and he must also draw the inference."
*Farmer*, *Id*. at 837. Stated differently, "an official's failure to alleviate a significant risk
that he should have perceived but did not, while no cause for commendation, cannot
under [Supreme Court] cases be condemned as the infliction of punishment" in violation
the Eighth Amendment. *Id*. at 838.

In this case, Plaintiff "disputes" many of Defendants' facts, but he has not
provided other facts showing that there is a genuine dispute. Plaintiff has had ample
opportunity to obtain facts to support his position. In the District of Idaho, the Court
issues a Standard Discovery and Disclosure Order in all pro se prisoner cases. The Order
compels the defendants provide to the prisoner plaintiff most, if not all, of the
information and items relevant to the claims and defenses at issue. The prisoner plaintiff
is permitted to conduct limited discovery after the disclosure period to request any
additional information or items not disclosed.

The Standard Discovery and Disclosure Order was issued in Plaintiff's case. Dkt.
7. As a result, Plaintiff either had all of the information and items he needed to support
his claims, or he failed to use the tools provided to him to do so. Discovery is now closed.

The record in this case also shows that Plaintiff did not cooperate with
Defendants' propounded discovery. See Footnote 1, *infra*. Plaintiff's Answers and
Responses to written discovery were due by May 4, 2022. Dkt. 18-5, p. 2. To date,
Plaintiff has not provided any answers or responses to Defendants, nor has he requested
an extension of time to respond. *Id*.; see Dkt. 18-5, Defendants' Propounded Discovery.

**MEMORANDUM DECISION AND ORDER - 4**

In this Order, where the Court finds that Plaintiff has not supported his "disputes" with facts, it is against this backdrop—that he had ample disclosures, time and tools to conduct discovery, and the ability to obtain relevant documents from Defendants or third parties backed up by the Court's authority to compel disclosures and discovery and issue subpoenas. See Dkt. 7.

### 3. Background Facts and Analysis

The material facts provided by the parties show the following. Sergeant Enrico Bongiovi and Correctional Officer Robert Ransom worked in D-Block at the Idaho State Correctional Center (ISCC) at the time of the incident. Both were aware that "Plaintiff and Wilson had shared a cell for an extended period of time without incident" in D-Block. Dkt. 18-4 (Ransom Aff.), p. 3; Dkt. 18-5 (Bongiovi Aff.), p. 2. Sergeant Bongiovi and Officer Ransom knew that Wilson had been moved out of Plaintiff's cell [i]n the days leading up to the incident," because both Plaintiff and Wilson reported that "they were not getting along with each other." Dkt. 18-4, p. 2; Dkt. 18-5, p. 2.

Importantly, Sergeant Bongiovi and Officer Ransom each report: "At no time did either Plaintiff or Wilson inform me, nor had I received any reports from others, that there had been threats made or any actual incidents involving physical harm between the two" or that "either feared for their safety." Dkt. 18-4, p. 2; Dkt. 18-5, p. 2. Officer Ransom more particularly states: "At no time during Plaintiff and Wilson's time together as cell mates on D-Block was I aware of any information that would indicate Plaintiff faced a credible threat to his safety. I had no information to suggest that Inmate Wilson

**MEMORANDUM DECISION AND ORDER - 5**

would attack Plaintiff or that he otherwise posed a substantial safety risk to his cell mate." Dkt. 18-4, p. 3.

Likewise, Sergeant Bongiovi was not aware of any evidence that the two inmates "presented a danger to each other." Dkt. 18-5, p. 3. Sergeant Bongiovi declares that he did not have any information prior to the incident of October 19, 2020, that would have suggested placement of Plaintiff and Wilson together as cellmates was inappropriate. *Id.*

Plaintiff himself has not alleged that he reported to either Defendant—orally or in writing—that there were past physical incidents, past threats of bodily harm, or future threats of bodily harm made between the two cellmates. See Plaintiff's Statement of Facts. Plaintiff's Affidavit states only that he had informed Defendants that "inmate Wilson and himself needed to be separated because they did not get along." Dkt. 24 (Plaintiff Aff.), p. 4.

On October 10, 2020, at approximately 9:00 p.m., Officer Ransom and Officer Stevens (not a defendant) were assisting with inmate pill call. Inmate Wilson approached Ransom and said he had been transferred to a new cell in D-Block, but that he had left his lamp in Plaintiff's cell. He asked Ransom to retrieve it for him. Dkt. 18-4, p. 2.

Officer Ransom opened Plaintiff's cell door a little bit to talk to him and asked Plaintiff to find the lamp. Plaintiff began looking for it. R. Aff, p. 3. Ransom intentionally put his foot in front of the door to prevent it from opening more than necessary, a technique Ransom occasionally had used before. R Aff, p. 2. Ransom declares that he had no intention of allowing Wilson access to Plaintiff's cell, and that took reasonable steps

**MEMORANDUM DECISION AND ORDER - 6**

to open Plaintiff's door only so far as necessary to allow him to speak with Plaintiff and retrieve the lamp. Dkt 18-4, pp. 2-3.

When Officer Ransom opened the door a bit and placed his foot against the door, Wilson suddenly and without warning pushed his way past Ransom and began beating Plaintiff, who tried to defend himself. Dkt 18-4, p. 3. Ransom stepped inside immediately but was not able to stop the fighting immediately. Ransom tried to separate Plaintiff and Wilson, but Wilson elbowed Ransom in the neck and continued to beat Plaintiff. Dkt. 18-4, p. 3; Dkt. 24-1, p. 7. Wilson was in Plaintiff's cell long enough to stab him twice and beat him extensively. Plaintiff finally was able to push Wilson out of the cell. Ransom exited the cell, and he and other officers ultimately sprayed Wilson with Oleoresin Capsicum to subdue him, restrained him, and removed him from the tier. *Id*., p. 3.

Plaintiff asserts that Ransom had "absolutely no reason to open the door of the Plaintiff's cell," but, instead, Ransom should have used the 8-inch x 18-inch "bean slot" door on the entry door, generally used to pass meals and other small items through. Dkt. 24, p. 3. Though it may have been safer for Ransom to talk to Plaintiff through the bean slot, nothing in the record showed that Ransom had sufficient facts to suspect that Wilson would push past him and enter Plaintiff's cell to assault him if Ransom opened Plaintiff's door and put his foot in front of it to regulate the opening of the door, rather than use the bean slot.

Plaintiff disputes whether IDOC policy allows the cell door of a protective custody inmate to be opened while other inmates are in the area. *Id*. Defendants assert that Plaintiff has not produced an IDOC policy or an affidavit of any IDOC official

**MEMORANDUM DECISION AND ORDER - 7**

substantiating this speculation. Discovery is now closed. Plaintiff cannot create a dispute based on speculation or unsupported assertions.

The deliberate indifference subjective showing requires that the official "have more than a mere suspicion that an attack will occur." *Berg*, 794 F.2d at 459. Plaintiff must demonstrate that on October 19, 2020, Defendant Ransom knew or inferred that Inmate Wilson presented a substantial risk of serious harm to Plaintiff and yet disregarded that knowledge or inference.

Here, Plaintiff has not shown that Defendants suspected a serious risk that a physical confrontation would occur, for the following reasons: no physical threats or confrontations had occurred between the two inmates in the past; a report from each of the inmates that they were "not getting along and needed to be separated" does not imply that either inmate suspected that a physical confrontation might occur. The fact that both inmates requested separation would indicate to officers that Wilson did not want to be around Plaintiff. Having moved the inmates away from each other, officers did not have any additional facts showing that Wilson was intending to return to assault Plaintiff, especially during a concocted ruse to trick an officer into opening the door for the purpose of gaining entry to assault Plaintiff. See Dkt 18-4, ¶¶ 3, 4, 6, 7 and 9; Dkt. 18-5, ¶¶ 4, 5, 8, 9 and 12.

Unlike the facts in this case, the Court found several examples of threats of harm that *do* meet the deliberate indifference test. In *Clem v. Lomeli*, 566 F.3d 1177 (9th Cir. 2009), inmate Clem's cellmate, Godman, became drunk and threatened to beat and kill him. Clem immediately informed a prison official, who told Clem to "deal with it."

**MEMORANDUM DECISION AND ORDER - 8**

Godman then attacked Clem, breaking his jaw. *Id.* at 1180. Godman's threat to beat and kill Clem was an allegation meeting the substantial risk of serious harm threshold, permitting Clem to proceed to trial. *Id.* at 1182. In contrast, in this case, Plaintiff did not report to Defendants that Wilson said he would beat or kill Plaintiff.

In *Wilk v. Neven*, 956 F.3d 1143 (9th Cir. 2020), Plaintiff and Inmate Nunley were housed in Unit 8, one of two protective custody units (7 and 8) in the prison. Opportunities for contact between the inmates in Units 7 and 8 existed. For example, inmates from the two units passed each other when inmates waited in the yard to go to classes or medical appointments. Nunley threatened to attack and kill Wilk. Immediately, Wilk reported the threat to his unit floor officer and was moved to Unit 7 for his protection. *Id.* at 1145-46.

Wilk filled out documentation outlining his need for protection and requesting that Nunley be placed on Wilk's administrative "enemy list," which would warn prison staff that Nunley posed a threat to him. Officials did not place Nunley on Plaintiff's enemy list. Four months later, Nunley attacked Wilk in the yard between Units 7 and 8. "Nunley allegedly exited his cell without authorization and attacked Wilk with stones, gravel, and his fists." *Id.* at 1146. On these facts, the United States Court of Appeals for the Ninth Circuit held that Wilk had stated sufficient facts about a substantial risk of harm to overcome summary judgment. Id. at 1150. Here, Plaintiff did not provide similar information to Defendants—that the other inmate had threated to beat or kill him; nor did Plaintiff request that Defendants document in Plaintiff's file a potential threat of harm from this particular inmate.

**MEMORANDUM DECISION AND ORDER - 9**

In contrast, examples of threats of harm that do *not* meet the deliberate indifference test include the following cases. *Winstead v. Williams*, 750 F. App'x 849 (11th Cir. 2018) (unpubl.), is very similar to the facts of Plaintiff's case. Winstead said that he made the defendants aware of the serious risk of harm posed by his "sexually violent and threatening" cellmate five weeks before an attack, when he submitted a grievance asking to be moved to a different cell. In the grievance, Winstead wrote,

> I need to be moved to a one man cell please.... I am always having problems with my roommate ... and I have problems with a lot of people in the dorm period.... Please move me A.S.A.P. before I get in trouble.... I keep getting roommates that I have a lot of trouble with. I want to go home. I don't want no trouble. Please move me as fast as you can.

*Id*. at 850.

Prison officials took no action to separate Winstead and his cellmate. Five weeks later, the cellmate assaulted Winstead. The Court dismissed Winstead's claim finding that, "[s]tanding alone, the grievance's vague references to "problems" and "trouble" with the cellmate, even when combined with a plea for urgent action, were not specific enough to make the defendants subjectively aware of a substantial risk of serious harm." *Id*. at 851. The appellate court affirmed the order of dismissal, concluding that "the district court correctly dismissed Winstead's complaint for failure to state a claim because the allegations do not plausibly show the defendants' subjective knowledge of a substantial risk of serious harm." *Id*. at 851.

Another factually similar case is *Wise v. Ranck*, 340 F. App'x 765 (3d Cir. 2009) (unpubl.), where inmate Wise did not tell Defendant Officer Ranck that he feared

an attack by his cellmate, but told Ranck only that "he and his cellmate did not get along, and "their arguments would likely become physical." *Id*. at 766. Wise also told Ranck that Wise was willing to engage in a physical altercation with his cellmate. *Id*. Wise alleged in his lawsuit that Ranck knew that his former cellmate had a year-long history of "antisocial territorial issues[s]," and that Ranck had relocated other prisoners who had shared a cell with the former cellmate when they had requested to be moved. *Id*. at 766-67.

Under these circumstances, the court concluded:

> While it might have been wise to move one of the inmates in these circumstances, warning Wise that fighting would not be tolerated and returning him to the cell to work it out—the action Ranck took—does not amount to a constitutional violation. *See, e.g., Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (threats between inmates are common and do not always serve to impute actual knowledge of a substantial risk of harm).
>
> ….
>
> Even assuming Ranck's complete knowledge of this history as Wise alleges it, Ranck's understanding would fall well short of knowing that Wise faced a substantial risk of serious physical harm at the hands of his cellmate when she placed him in the cell.

*Id*.

In *Alsobrook v. Alvarado*, 656 F. App'x 489 (11th Cir. 2016), inmates Alsobrook and McCloud shared a cell without incident for several weeks before McCloud attacked Alsobrook. Just before the fight, "McCloud stopped [Officer] Alvarado as he was making his rounds and told him that "[y]ou need to separate me and my roomie. I don't like his character and we're going to have some problems if you don't get him out of here right

now," and "[i]f you ... don't get him out, I'm gonna send him out." *Id.* at 492. Alvarado declined to separate the inmates and told them to speak to the sergeant on the next shift. Before the next shift began, McCloud beat Alsobrook with a large battery wrapped in a sock. The Court of Appeals for the Eleventh Circuit held that "those types of statements, without more, are not enough to make a guard subjectively aware of a substantial risk of serious harm." *Id.* at 493-94.

In the face of these cases, Plaintiff cannot show that he informed Defendants Ransom and Bongiovi of a substantial threat of serious harm. Plaintiff generally argues that Wilson should not have been housed in D-Block, but Plaintiff provides insufficient evidence to support this. There is no evidence showing that, by IDOC security standards, either Plaintiff or Wilson should have been housed in the maximum security facility rather than a medium security facility, or, more particularly, that, if such information existed, these two Defendants knew of it.

In the Court's review of Plaintiff's response, it noted that some of his exhibits that originated from the IDOC were blacked out and unreadable. The Court ordered Defendants to submit nonredacted/readable versions of the exhibits for the Court's in camera review, with a security log to Plaintiff identifying the documents for Plaintiff. Dkt. 26. Defendants have done so. Dkt. 27.

To show that Wilson was a dangerous inmate, Plaintiff has submitted an extremely vague email he received on the date of the assault. It appears to be from his sister or a good friend who calls herself "Sis." The person who is the subject of the email's content not clearly identified, but "Sis" seems to be asking how Plaintiff and Wilson are getting

along, suggests that "Sis" has a personal relationship with Wilson and separately corresponds with him, informs Plaintiff that Wilson is suicidal, and asks Plaintiff, "keep an eye on him" and "don't let him down." Dkt. 24-1, p. 1. Assuming that the Court has correctly identified the subject matter of the email, it concludes there is nothing in the email that suggests Wilson was going to attack Plaintiff after the two were separated, or that the Defendants knew the content of the email and drew an inference that Wilson continued to pose a risk of harm to Plaintiff after their separation.

Nothing in the nonredacted records shows that Wilson was a threat to any person or a particular threat to Plaintiff. Dkt. 27. Nothing shows that prison officials, and especially these Defendants, had reason to believe that Wilson would harm others, or particularly, would harm Plaintiff. The documentation Plaintiff has submitted shows that (1) Wilson had caring friends and relatives who kept Wilson apprised of life events of family members on the outside; and that Wilson was contemplating harming himself. Plaintiff submits an undated letter or document written by Wilson that discusses his self-harm, psychosis, and suicide ideation. Nothing in the letter, even if Defendants had notice of it, shows that Wilson should have been labeled a threat to Plaintiff after the two of them sought a separation request and that was granted. Plaintiff is correct that the exhibits may show that Wilson had "serious mental health thoughts of harm," but the thoughts were of self-harm, which does not support Plaintiff's claims here. See Dkts. 24-3, p. 2; 27.

Plaintiff also asserts that Sergeant Bongiovi did not properly train Officer Ransom. *See Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) (failure to train can be grounds for

**MEMORANDUM DECISION AND ORDER - 13**

supervisory liability). Plaintiff provides no supporting documentation or an IDOC official's affidavit showing that improper training played a role in Officer Ransom's actions.

Because Plaintiff has insufficient evidence to show that Defendants failed to protect Plaintiff *because of* deliberate indifference to a serious risk of harm, Defendants are entitled to summary judgment. *See Farmer*, 511 U.S. at 837 (a prison official is deliberately indifferent only if he or she "knows of and disregards an excessive risk" to inmate health or safety).

Plaintiff also requests injunctive relief in the form of future protection from Wilson. Title 18 U.S.C. § 3626(a)(1)(A) limits such prospective relief in any prison civil rights action to an order that "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff." The Court informed Plaintiff that he would have to show that he is still housed with or near Wilson to warrant injunctive relief. Wilson has been released from prison. See https://www.idoc.idaho.gov/content/ prisons /residentclientsearch/results?last_name=&first_name=&number=96013. Defendants also show that Plaintiff has not been housed under the supervision of Defendants Christensen or Bongiovi for a considerable period of time. [1] These facts render the request for injunctive relief moot.

---

[1] In addition, Defendants assert:

> Defendants timely served written discovery to Plaintiff on April 4, 2022, which included the following Requests for Admission: REQUEST FOR ADMISSION NO. 3: Admit that you are no longer housed in a facility directed or overseen by Defendant Jay Christensen. REQUEST FOR ADMISSION NO. 4: Admit that you are no longer

As to Plaintiff's state law tort claims brought under 28 U.S.C. § 1367, the Court's supplemental jurisdiction authority, Defendants assert that Plaintiff failed to timely file a Notice of Tort Claim as required under Idaho Code, § 6-901, *et seq.*, requiring his state law claims to be dismissed as a matter of law.

Idaho Code § 6-905 requires: "All claims against the state arising under the provisions of this act and all claims against an employee of the state for any act or omission of the employee within the course or scope of his employment shall be presented to and filed with the secretary of state within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later."

Plaintiff does not provide a Notice of Tort form showing that he timely filed a claim with the secretary of state. Therefore, the state law claims are subject to dismissal.

### 4.  Qualified Immunity

A motion for summary judgment on grounds of qualified immunity may be granted where the allegations on the face of the complaint, taken as true, are sufficient to show that the qualified immunity test is met. *See Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997). In § 1983 actions, the doctrine of qualified immunity protects state

---

housed in a protective custody unit supervised or overseen by Defendant Bongiovi. See Exhibit A, Declaration of Counsel in Support of Defendants' Motion for Summary Judgment ("Counsel Decl."), filed contemporaneously herewith. To date, no response to these Requests for Admission has been forthcoming.

Dkt. 18-1, p. 8. The Court agrees that, "in accordance with Fed. R. Civ. P. 36(a)(3) and the Court's Standard Disclosure and Discovery Order (Dkt. 7), those facts are now deemed admitted." *Id.*

**MEMORANDUM DECISION AND ORDER - 15**

officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate clearly established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). A qualified immunity analysis consists of two prongs: (1) whether the facts as alleged by plaintiff establish a violation of a constitutional right, and (2) whether that right was clearly established given the state of the law at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Courts may address either prong of the qualified immunity analysis first. *Pearson*, 555 U.S. at 236. The qualified immunity inquiry is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514 (1994). However, "under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

As to the first prong, the court considers whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. As to the second prong, a "case directly on point" is not necessary to show that the law was clearly established. Qualified immunity will not apply where existing precedent shows that "the statutory or constitutional question [is] beyond debate," *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (citation and punctuation omitted), and every reasonable officer in the same circumstance would have understood "that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

At the heart of the qualified immunity analysis is the substantive law governing the particular claims at issue, which the Court has outlined above. Based on the same factual analysis set forth above, Plaintiff has not shown that it was clearly established that Officer Ransom should have known that the type of report the cellmates made—that they were not getting along and needed to be separated—was enough to suspect that Wilson would set up Ransom to be able to gain access to Plaintiff's cell and beat him. Nor is there any case law showing that Ransom should not have used the method he chose to restrict access to the cell by opening the door a bit and placing his foot across the front of the door. Thus, Plaintiff has not shown that the facts as alleged establish a violation of the Eighth Amendment or that the right not to have his door opened under the circumstances was clearly established given the state of the law at the time of the alleged misconduct. Defendants prevail on the qualified immunity defense.

### 5.  Conclusion

Plaintiff has produced insufficient facts to proceed to a jury trial against Defendant Ransom and Defendant Bongiovi in their individual capacities on Eighth Amendment failure to protect claims. The injunctive relief claims for protection from Wilson are moot. Defendants are also entitled to qualify immunity. Plaintiff has failed to meet the statutory notice requirement for his state law negligence claims. Accordingly, all of Plaintiff's claims will be dismissed.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 18) is GRANTED.

2. This case is DISMISSED with prejudice.

DATED: March 2, 2023

Honorable Debora K. Grasham
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**